613 So.2d 717 (1993)
Laurie FUGE
v.
Hendrik UITERWYK.
Nos. 91-CA-0467, 91-CA-1345.
Court of Appeal of Louisiana, Fourth Circuit.
January 27, 1993.
*718 David J. Foshee, New Orleans, for defendant/appellant.
Terence L. Hauver, Lowe, Stein, Hoffman, Allweiss & Hauver, New Orleans, for plaintiff/appellee.
Before WARD, ARMSTRONG and WALTZER, JJ.
WALTZER, Judge.
This litigation arises from Laurie Fuge's suit for divorce from Hendrik Uiterwyk. Mr. Uiterwyk appeals from adverse judgments by the Civil District Court in the Parish of Orleans. After ruling that it had jurisdiction over the subject matter and jurisdiction over his person, his motion for termination of alimony was denied, his obligation for child support was increased, his visitation rights with his minor children were restricted, and, he was adjudicated to be in contempt of court.[1]

PROCEDURAL BACKGROUND
Ms. Fuge and Mr. Uiterwyk were married in New Orleans, Louisiana in 1970. Two years later they moved to Florida. The children of their union were born in Florida. The couple separated in 1980 and were divorced in Florida in 1985. The Florida court in its final judgment of divorce awarded shared parental responsibility. Ms. Fuge was the primary residential custodian and Mr. Uiterwyk the secondary residential custodian.
*719 Pursuant to a Florida consent judgment of June 21, 1986, Ms. Fuge was allowed to move the children permanently from Florida to New Orleans so that she could attend Tulane Law School. This judgment provided that Florida would retain jurisdiction over the parties for a period of one year.
One year and three months later on September 29, 1987, Ms. Fuge filed a rule in Orleans Parish asking the trial court to change custody, alter visitation and increase child support. The trial court issued an injunction prohibiting Uiterwyk from filing suit in Florida on the same issues. Three weeks later, on October 20,1987, Mr. Uiterwyk filed suit in Florida to revoke the 1986 consent judgment and to hold Ms. Fuge in contempt for failure to abide by the court ordered visitation. In addition, in Orleans Parish, Mr. Uiterwyk filed an exception to the jurisdiction of Louisiana relying on the provisions of the Uniform Child Custody Jurisdiction Act (UCCJA). La.R.S. 13:1700 et seq. A hearing was held on February 19, 1988, and the District Court of Orleans concluded that Mr. Uiterwyk's exception should be sustained.
On March 23, 1988, Ms. Fuge filed a motion for a new trial which was denied without a hearing. Ms. Fuge then appealed the trial court's determination and this Court concluded that the Louisiana courts did have jurisdiction according to the UCCJA. La.R.S. 13:1700 et seq. The case was then remanded for further proceedings.
On August 2, 1989, the Florida courts deferred jurisdiction to the Louisiana courts in accordance with the Fourth Circuit's determination. On June 29, 1990 and July 13, 1990 the Louisiana trial court rendered its judgments and from these, as well as various contempt proceedings, Mr. Uiterwyk appeals. Mr. Uiterwyk raises numerous assignments of error, many of which concern jurisdiction. We will address those first.

JURISDICTION
As previously determined by this Court, Louisiana meets all of the UCCJA requirements for jurisdiction. La.R.S. 13:1700 et seq. Louisiana has traditionally exercised a broad grant of jurisdiction over the status of minors domiciled or located within this State. La.C.C.P. Art. 10(A)(5). This broad jurisdiction was modified by the adoption of the UCCJA in 1978. La.R.S. 13:1700 et seq.
The UCCJA imposes two basic requirements for the establishment of jurisdiction. They are: (1) the "home state" test and, (2) the "best interest of the child" test. La.R.S. 13:1700 et seq. If the court is found to meet either of these tests, it has jurisdiction. This court has previously determined that Ms. Fuge meets both of these requirements.
Mr. Uiterwyk attempts to assert that the provisions of the Parental Kidnapping Prevention Act (PKPA) would prevent Louisiana from modifying the Florida visitation and support orders. In support of this contention, Mr. Uiterwyk relies on a federal case interpreting the provisions of PKPA. Heartfield v. Heartfield, 749 F.2d 1138 (5th Cir.1985). In this case Texas was found to retain jurisdiction in accordance with the divorce decree and relevant Texas statutes. The court was careful to note that the provisions of the PKPA apply when states issue conflicting orders. Since the decision in this case, it has been subsequently determined that federal courts do not have jurisdiction to hear disputes between states raised under the PKPA. Rogers v. Platt, 814 F.2d 683, 687 (D.C.Cir. 1987). The court in Rogers also concluded that the intent of the PKPA was to require all states to conform to the provisions of the UCCJA. Id. In the comments of the Act itself the intended purpose is stated to, "create a recognizable standard" by which all states may resolve jurisdictional disputes. 28 U.S.C.A. § 1738A.
Since the intended purpose of the PKPA is to apply the same standards as the Uniform Child Custody Act, we feel that the Louisiana court correctly asserted jurisdiction. Both the Louisiana and Florida courts were aware of the other's jurisdictional claims and were careful not to issue conflicting orders. This is further reinforced *720 by the fact that upon the expiration of the one year jurisdictional retention, the Florida courts deferred to Louisiana's jurisdiction. Ms. Fuge meets the requirements of the PKPA because Louisiana was the "home state" at the commencement of the proceedings in accordance with 28 U.S.C.A. § 1738A(c)(2)(A). This section provides in pertinent part, "a child custody determination made by a court of a state is consistent with the provisions of this section only if one of the following conditions is met (i) it is the home state of the child on the date of the commencement of the proceedings, or (ii) had been the child's home state within six months before the date of the proceedings..." 28 U.S.C.A. § 1738A(c)(2)(A). Ms. Fuge and her children have resided in Louisiana since 1986 and therefore clearly meet the requirements of this provision. Therefore, Louisiana has correctly asserted subject matter jurisdiction.
Mr. Uiterwyk also asserts that Louisiana lacks personal jurisdiction. La.R.S. 13:3201 provides that Louisiana may exercise personal jurisdiction over a non-resident on any basis consistent with the constitutions of Louisiana and the United States. However, since this contention was not raised at the trial court level, the issue cannot be raised now. State v. Great Atlantic & Pacific Tea Co., 190 La. 925, 183 So. 219 (1938), cert. den., 305 U.S. 637, 59 S.Ct. 108, 83 L.Ed. 410 (1938).
Mr. Uiterwyk then asserts the Louisiana courts erred by entering a judgment relating to the custody determination of the Florida courts. This contention is without merit because both the UCCJA and PKPA grant the right to modify custody determinations. La.R.S. 13:1700 et seq., 28 U.S.C.A. § 1738A.

INJUNCTION PROHIBITING PROCEEDINGS IN FLORIDA COURTS
Mr. Uiterwyk further asserts that the Louisiana trial court lacked authority to enjoin proceedings in the Florida courts. This power to enjoin proceedings arises out of the authority given in the UCCJA and PKPA. La.R.S. 13:1700 et seq.; 28 U.S.C.A. § 1738A. Both of these acts provide that, "a court of a State shall not exercise jurisdiction in any proceeding for a custody determination commenced during the pendency of a proceeding in a court of another state where such court of that state is exercising jurisdiction consistent with the provisions of this section." Id. This is done to avoid the very jurisdictional disputes that Mr. Uiterwyk complains of. Once a court of a state begins proceedings dealing with child custody, the purpose of enjoining proceedings in other states is to avoid jurisdictional disputes. Additionally, the District Court of Appeal of Florida, Second District, filed in that court a decision entitled Uiterwyk v. Uiterwyk, 592 So.2d 1156 which moots any argument previously advanced by Mr. Uiterwyk regarding the lack of subject matter jurisdiction.
We find Mr. Uiterwyk's arguments concerning jurisdiction to be without merit.

ALIMONY
We next turn to Mr. Uiterwyk's assignment of error concerning the amount of alimony. He sought to decrease or terminate alimony while Ms. Fuge sought an increase in alimony. The trial court ruled that although each party has experienced a change in circumstances, these changes cancel each other out. A trial court's alimony order will not be reversed except for abuse of discretion. Hogan v. Hogan, 549 So.2d 267, 271 (La.1989). Alimony is that which is necessary for the nourishment, lodging and support of the person who claims it, including education in the case of a minor or a full time dependent student under nineteen years. La.C.C. Art. 230. Alimony is granted in proportion to the wants of the person requiring it, and the circumstances of those who are able to pay. La.C.C.Art. 231. Nevertheless, Ms. Fuge is now a member of the Louisiana Bar and we are not convinced, as the trial court was convinced, that Ms. Fuge cannot obtain employment. We hold the trial court erred and abused its discretion by not terminating alimony.

*721 CHILD SUPPORT
We now turn to Mr. Uiterwyk's arguments that the trial court erred in assessing child support. The trial court found a material change of circumstances from the time a Florida court first assessed child support at $2,000. The trial court in Orleans Parish raised child support to $9000. By jurisprudential rule of practice, a trial court's child support order will not be reversed except for abuse of discretion. Hogan v. Hogan, 549 So.2d 267, 271 (La. 1989); Loyacano v. Loyacano, 358 So.2d 304, 310-312 (La.1978) on original hearing, vacated and remanded on other grounds, 440 U.S. 952, 99 S.Ct. 1488, 59 L.Ed.2d 766 (1979). In considering child support LSA-C.C. Art. 227 establishes that both parents have the obligation of supporting, educating and maintaining their children. If the parents are divorced and the children are living with the mother, they are entitled to the same standard of living as if they resided with their father whenever financial circumstances of the father permit. Ducote v. Ducote, 339 So.2d 835 (La.1976). In determining child support pursuant to divorce, the court may consider assets of the father as well as income. L.S.A. C.C. Art. 227; Mittlebronn v. Mittlebronn, 337 So.2d 608 (La.App. 4th Cir.1976).
The trial court in this case found that there was a "significant change in circumstances" warranting a modification of the child support award in accordance with L.S.A. R.S. 9:311. The trial court declined to use the mandatory guidelines set forth in L.S.A.-R.S. 9:315 because these guidelines took effect on October 1, 1989, while the rule to increase support was filed in 1987. Absent a specific provision in the statute it will not be applied retroactively, and the guidelines are not critical in our review.
We cannot say that the trial court abused its discretion by increasing the amount from two thousand ($2,000) to nine thousand ($9,000) dollars a month.

RETROACTIVITY OF THE CHILD SUPPORT AWARD
Mr. Uiterwyk also contends that the trial court abused its discretion by making the child support retroactive. La.R.S. 9:310 provides that an order for child support or alimony shall be retroactive to the filing date of the petition. Therefore, unless the court finds good cause for not making the award retroactive, the court may fix the date that such an award shall become due. The trial court, in accordance with La.R.S. 9:310, ruled that the support payments were retroactive to the date of the filing of the rule. Therefore, this court finds no abuse of discretion as to the retroactivity of the support payments.
Mr. Uiterwyk disagrees with the date that the trial court determined for retroactivity. The trial court ruled that the child support payments would be retroactive to September 27, 1987, the filing date of the first rule. Mr. Uiterwyk alleges that the correct date for retroactive application should be in 1989 after Louisiana accepted jurisdiction under the UCCJA. The words of the statute itself state, "retroactive to the filing date of the petition." La.R.S. 9:310. It then becomes necessary to determine the exact meaning of the phrase. Mr. Uiterwyk alleges that the 1987 petition did not state a cause of action and therefore, cannot be the correct date for retroactive application. However, the plain meaning of the statute is to make the payments retroactive to the date of the filing of the petition. The original petition was filed on September 27, 1987, and was subsequently amended. We feel that the trial court was correct in reaching back to the 1987 petition because it appears to be consistent with the wording of the statute. Clinton v. Clinton, 598 So.2d 711 (La.App. 5th Cir. 1992).

VISITATION
Mr. Uiterwyk's next two assignments of error concern visitation rights. He contends that the trial court erred in limiting his visitation to Orleans Parish and requiring him to post a $250,000.00 bond. The trial court's discretion in custody matters is entitled to great weight and should not be disturbed on appeal, unless a clear showing of abuse of discretion is made. *722 Everett v. Everett, 433 So.2d 705, 708 (La. 1983).
L.S.A.C.C. art. 131 (formerly L.S.A.C.C. art. 146) provides that the best interest of the child standard requires the trial judge to determine the feasibility of a joint custody plan, as well as rights of access and communication between the respective parents and the children. An examination of the record shows that Ms. Fuge fears that Mr. Uiterwyk will not comply with the visitation orders issued by the court. Nonetheless, Mr. Uiterwyk should have the opportunity to visit with his children in order that a proper father-child relationship may develop. A visitation schedule must be fashioned as to the place, time and frequency of visitation. The trial court is ordered to fashion such a schedule and to reassess the propriety of visitation outside of the Parish of Orleans.

CONTEMPT PROCEEDINGS AND ATTORNEYS' FEES
Finally, we address Mr. Uiterwyk's last three assignments of error concerning the contempt proceedings. Mr. Uiterwyk's twelve contempt judgments are the result of his failure to pay the amended child support award. Two of the judgments arise from his violation of the trial court's order enjoining the parties from proceedings in the Florida court on the issue of custody and visitation.
Mr. Uiterwyk argues that the contempt judgments are unconstitutional because they have no purge periods or that the temporary purge periods have expired in violation of his due process rights. Regarding the argument on constitutionality, we note that it is only when a contempt proceeding is criminal in nature that the party is entitled to the rights guaranteed under the United States and Louisiana Constitutions.
The United States Supreme Court set out guidelines for determining whether a contempt proceeding is civil or criminal in nature in Feiock v. Feiock, 485 U.S. 624, 108 S.Ct. 1423, 99 L.Ed.2d 721 (1988). The court fashioned a test, that if the relief imposed is in fact a determinate sentence without a purge clause, then it is civil in nature. However, if the sentence is determinate then the punishment is criminal in nature. Id. The Louisiana courts interpreted the Feiock holding in Champagne v. Champagne, 541 So.2d 933 (La.App. 5th Cir.1989) and in Dunn v. Dunn, 546 So.2d 819 (La.App. 5th Cir.1989). We have determined that the contempt charges in this case are civil and find that the trial court was within its great discretion in holding Mr. Uiterwyk in contempt. Tschirn v. Tschirn, 434 So.2d 113 (La.App. 5th Cir. 1983).
We turn next to Mr. Uiterwyk's complaints concerning the assessment of attorneys' fees. Ms. Fuge filed rules of contempt on September 26, 1990 and December 28, 1990, because Mr. Uiterwyk had persisted in filing pleadings in the Florida courts, although Louisiana and Florida courts had clearly held jurisdiction to be in Orleans Parish. Appellant contends that there is no basis for awarding attorneys' fees to the prevailing party on a contempt rule. Mr. Uiterwyk also challenges the award of attorneys' fees granted in connection with a rule of contempt filed by Ms. Fuge for failure to pay child support. He asserts that these fees are either unauthorized by statute and/or excessive and unreasonable. We disagree. Considering the endless avalanche of repetitive filings of pleadings both here and in Florida, Mr. Uiterwyk's resolute resistance to any and all opinions and orders by the courts in Florida and Louisiana, and Ms. Fuge's obligation to either prosecute or defend on behalf of her children, we find the awards of attorneys' fees sound and supportable. La.R.S. 9:375. This assignment of error has likewise no merit.

CONCLUSION
In sum, we decide these issues as follows: Ms. Fuge's right to alimony is terminated and the trial court award of child support is affirmed. Although the trial court may issue a bond "for good cause ... to insure compliance with a visitation order", La.R.S. 9:312, we believe it is in the *723 interest of all that the remaining issues of visitation, place of visits, and length of visits should now be reconsidered by the trial court because the circumstances of both parties have changed and the children have grown older. We also remand to the trial court the issue of contempt. The contempt proceedings should be abated until reconsideration by the trial court, so that Mr. Uiterwyk can visit with his children without fear of arrest. The trial judge erred by ordering that a bond as security for visitation be posted in an amount equal to the child support owed. The trial court is to consider the necessity of a bond, and, if warranted, set it at a reasonable amount. Although child support payments were due and owing, and are now executory, the trial court erred by in effect tying visitation privileges of a non-custodial spouse to payment of child support. Crooks v. Crooks, 425 So.2d 385 (La.App. 3 Cir.1982); Simon v. Simon, 450 So.2d 755 (La.App. 5 Cir. 1984).
Appellee has requested that this court assess sanctions against appellant for raising repetitive claims definitively decided long ago. We decline to do so, as there were sufficient legal issues to be considered by this court.
AFFIRMED IN PART, REVERSED IN PART, REMANDED.
NOTES
[1] This case was submitted to a new panel because of the death of Judge Rudolph Becker and Judge Pro Tempore Alvin Rudy Eason.